Filed 6/16/14  P. v. Fernanddez CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039364 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. F1139027) |
| v. | |
| GENARO GARCIA FERNANDEZ, | |
| Defendant and Appellant. | |

Defendant Genaro Garcia Fernandez was convicted by jury trial of five counts of lewd conduct on a child under 14 (Pen. Code, § 288, subd. (a)),[1] three counts of forcible sexual penetration (§ 289, subd. (a)(1)), three counts of forcible rape (§ 261, subd. (a)(2)), and four counts of aggravated sexual assault on a child under 14 (§ 269, subd. (a)).[2]  He

---

[1]    Statutory references are to the Penal Code.

[2]    All of defendant's convictions arose from offenses against his daughter Jane Doe. The aggravated sexual assault counts were based on rapes and sexual penetrations. Defendant was originally charged with one count of lewd conduct on another of his daughters.  That daughter testified at trial that defendant had never molested her. Defendant was acquitted of this count and the multiple victim allegation was found not true.  He was also charged with one count of forcible sodomy (§ 286, subd. (c)) and one count of forcible oral copulation on a child under 14 (§ 288a, subd. (c)) against Jane.  The jury found that he had committed the sodomy and oral copulation counts, but it found not true the statute of limitations allegations that were necessary to convictions on these counts.  Those counts were dismissed.

was committed to state prison to serve an indeterminate term of 60 years to life consecutive to a determinate term of 64 years. On appeal, defendant asserts that his trial counsel was prejudicially deficient in failing to make two objections and in failing to include a different theory in his closing argument. We find no prejudicial deficiencies and affirm the judgment.

## I. Background

Defendant was born in 1961. His daughter Jane was born in August 1985. When Jane was five years old, defendant "caressed" her naked bottom and thighs "very inappropriately." She noticed that he was "breathing hard" while he was doing this. Jane told her mother that defendant had "touched" her on her "behind," and she was "hurting" when she sat down. Jane's mother confronted defendant, but he denied touching Jane. Jane's mother saw redness on Jane that looked like a rash. When Jane was around six years old, Jane's mother noticed that a pair of Jane's underwear had a dried up yellowish substance on them that looked and smelled like semen. She asked defendant about this substance, and he denied any knowledge about it.

When Jane was seven years old, defendant began getting into bed with her and molesting her. He would pull down his pants and hers, lie on top of her, put his fingers inside of her vagina, and put his penis in her vagina. Defendant told her that it was "a very normal thing" for a father to sleep with his daughter. Jane cried because his actions hurt her, but she was afraid of him. A few times she bit his hand to try to stop him. Jane tried removing his hand from her body, moving her body away from him, and telling him to stop, but he just laughed and continued molesting her. Jane also tried to physically "get him off" of her, but she was not successful. Defendant would put his hand over her mouth and "push even harder." Jane remembered four sexual penetrations when she was seven and nine years old. She remembered multiple rapes when she was seven years old.

2

One day, when Jane was nine years old, her mother returned home, knocked on the door, and had to wait a long time for someone to answer the door. Jane came to the door looking nervous and "teary." She seemed "scared" but would not tell her mother what was wrong. Defendant was home, and he seemed "defensive" and angry. He denied that anything had happened, and he "swore by Christ and his mother that he had never touched [Jane] in any of her parts that were not to be touched." Jane's mother asked Jane if defendant was touching her, and Jane denied it. After that, Jane's mother never asked either of them about it again. The sexual penetrations and rapes continued when Jane was 12, 13, and 14 years old and then stopped.

In June 2011, when Jane's daughter reached the age at which defendant had begun molesting Jane, Jane reported defendant's offenses to the police. She was worried about the safety of her niece because her niece was taken to visit defendant frequently. Jane placed two recorded "pretext calls" to defendant during which she accused defendant of molesting her beginning when she was seven or eight years old. He did not deny it. Defendant admitted during these calls that he had sucked on Jane's breasts when she was eight or nine years old and did not deny that he had penetrated her with his fingers at that age. But he insisted that they had not had sex until she was 14 or 15 years old and "wanted it." Defendant was also adamant that Jane was "a virgin until you were 13 or 14 years old."

A week later, the police interviewed defendant and told him that Jane had accused him of inappropriately touching her when she was young. His response was "[i]t's possible" and "[i]f she says so." The police asked him if he had touched Jane in a "sexual" manner, and he said "maybe" and "if she said it, I think so." Defendant told the police that, when Jane was 14 years old, she had come to his room and had sex with him. The police told him that she had not told them that, and defendant said "[t]hen I already blew it." He admitted that having sex with his daughter when she was 14 years old "wasn't right." Defendant complained that Jane had accused him of "tak[ing] her

3

virginity" when she was seven years old, and "[t]hen I told her, that isn't true. She was twelve or thirteen years old."[3] Defendant told the police that Jane had put her breasts in his mouth when she was seven or eight years old, and he had "kissed" and "sucked" her breasts. He also admitted having sex with Jane three or four times and touching her with his fingers eight times. Defendant wrote a letter to Jane in which he insisted that he had not taken her virginity but admitted that "we did have sex" and asked for her forgiveness.

## II. Discussion

Defendant contends that his trial counsel was prejudicially deficient in three respects. First, he claims that his trial counsel should have objected to the use of the word "victim" to refer to Jane in the transcripts of the pretext calls. Second, he contends that his trial counsel was deficient in failing to object to one question posed to the prosecution's child sexual abuse accommodation syndrome (CSAAS) expert witness. Finally, he maintains that his trial counsel's closing argument was prejudicially deficient because he did not argue that Jane was 14 years old at the time of the aggravated sexual assault offenses.

When a defendant challenges his conviction based on a claim of ineffective assistance of counsel, he must prove that counsel's performance was deficient and that his defense was prejudiced by those deficiencies. (*People v. Ledesma* (1987) 43 Cal.3d 171, 218; *Strickland v. Washington* (1984) 466 U.S. 668, 687.) "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

---

[3] Jane testified at trial that defendant had in fact taken her virginity.

4

(*Strickland v. Washington*, *supra*, 466 U.S. at p. 687.)  "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Id*. at p. 694.)

"Judicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 689.)  Thus, whenever counsel's conduct can be reasonably attributed to sound strategy, a reviewing court will presume that the conduct was the result of a competent tactical decision, and the defendant must overcome that presumption to establish ineffective assistance.  (*Ibid.*)

### A.  Use of "Victim" In Transcripts of Pretext Calls

Defendant claims that his trial counsel was prejudicially deficient in failing to object to the use of the word "victim" to refer to Jane in the transcripts of the two pretext calls.

At trial, the police detective who had monitored the pretext calls testified about the pretext calls.  Because the conversations had been in Spanish, the detective had prepared English transcripts.  Without objection, she was allowed to read the transcripts to the jury, and the transcripts were admitted into evidence.  The detective testified that "S-1 refers to defendant.  V-1 refers to Jane Doe."  She then read the first transcript to the jury.  The first transcript referred to Jane three times as "the victim," but primarily referred to her as "she."  The second transcript referred to Jane a dozen times as "the victim" but also primarily referred to her as "she."

Defendant claims that his trial counsel's failure to object to the use of the word "victim" in the pretext call transcripts was deficient because it "conceded his client's guilt at the very beginning of the trial."  Not so.  First, the pretext call transcripts were not introduced at the "very beginning of trial" but instead after Jane and her mother had

5

testified about defendant's molestation of Jane.  Second, these transcripts contained defendant's concessions that he had repeatedly molested Jane.  The main accusation he refused to concede, at least some of the time, was that he had engaged in intercourse with Jane before she was 14 years old.  In this context, defendant's trial counsel had nothing whatsoever to gain by objecting to the use of the word "victim" in these transcripts and demanding that they instead refer to Jane as the "alleged victim."  Furthermore, it is inconceivable that defendant could have been prejudiced by the use of "victim" rather than "alleged victim" in these transcripts as it was indisputable from these transcripts alone that defendant admitted molesting Jane and therefore that she was a "victim."

### B.  Expert Testimony

Defendant asserts that his trial counsel was prejudicially deficient in failing to object to a single juror question about "memory" posed to the prosecution's CSAAS expert witness.

During defendant's trial counsel's cross-examination of Jane's mother, he asked her if she agreed that "[i]t's difficult to remember things that happened 20 years ago."  She agreed.  Jane testified on direct examination that she had "block[ed] it [(the molestations)] off" for many years because she wanted to forget them.  On cross-examination, Jane conceded that she had "a hard time" remembering some "specifics."  She also admitted that her memories of the events were "somewhat hazy."  The police detective who had interviewed Jane testified that Jane had difficulty remembering the dates of the offenses, and that this was not unusual for sexual assault victims.

Carl Lewis testified for the prosecution as an expert on CSAAS.  Near the beginning of Lewis's testimony, the trial court instructed the jury that his testimony "is not evidence that the defendant committed any of the crimes charged against him," and the jury was to "consider this evidence only in deciding whether or not [Jane's] conduct was not inconsistent with the conduct of someone who had been molested and in

6

evaluating the believability of her testimony."[4]  Lewis had interviewed about 700 alleged victims of child sexual abuse and hundreds of suspects.  He testified that some child sexual abuse victims have difficulty recalling and describing details of the abuse.  Lewis testified that it was "often difficult for [child sexual abuse victims] to have recollection about particular" times when the abuse occurred.

The prosecutor asked Lewis about people who "had difficulty recalling what happened when they were five years old."  "Q.  Have you ever encountered, from your experience in interviewing child witnesses, any witnesses who had difficulty recalling what happened when they were five years old?  [¶]  A.  Yes.  [¶]  Q.  How so?  [¶]  A. Depending on how old the child was at the time I was talking with her, five years old may have been 12 years ago.  It's difficult to remember specific things about what happened 12 years ago for many people.  [¶]  Q.  Do you have difficulty remembering events when you were five years old?  [¶]  A.  Yes.  I have some anecdotes but I certainly can't remember very well."  Defendant does not claim that his trial counsel should have objected to any part of this testimony by Lewis on direct examination.

The court allowed jurors to submit questions for the court to ask if counsel had no objections to them.  Multiple juror questions were submitted for Lewis to answer, and the court posed some of them to Lewis.  "THE COURT:  Is it common a victim, looking back several years later, might fill in details that didn't actually happen?  [¶]  THE WITNESS:  I would not say that that's common in my experience; although in the grand scheme of things, I suppose that's possible, but I would not know.  [¶]  THE COURT: Wouldn't it be very easy for a young child, aged five to seven, to remember any event or experience at the time that was unusual or traumatic to them in their childhood?  [¶]  THE WITNESS:  My experience and training tells me that it is not uncommon for children to recall negative traumatic experiences occurring when they were in that age group."

---

[4]     The court repeated this instruction at the end of the trial.

The prosecutor then followed up on this issue. "Q. Is it very difficult to describe how memory works? [¶] A. Yes. [¶] Q. Has there not been much discussion in the scientific literature about how memory works? [¶] A. Yes. [¶] Q. Has there been discussion in the scientific community about how memories are lost over time? [¶] A. Yes. [¶] Q. And has there been discussion about filling in those gaps of memories with false memories? [¶] A. Yes. [¶] Q. Safe to say that over time, people lose their memories about particular details; is that correct? [¶] A. Yes. [¶] Q. It's also safe to say that when a person is young, looking back, describing something that occurred when they were five and seven years old, that there would be significant gaps of memory during that time; is that accurate? Fair to say? [¶] A. It's fair to say. But, again, the research is -- is pretty well-established that people remember the salient details of negative experiences. [¶] Q. Now, let's say that there's this person who is looking back and remembering about -- about things that happened when they were five to seven years old. Let's say a lot of bad things were happening back then. Is it safe to say that they may forget particular details of one bad thing versus another bad thing? [¶] A. Sure. [¶] Q. Why is that? [¶] A. The degree of badness. The severity of whatever it is they're recalling. They may attach a stronger significance to one negative experience than another. [¶] Q. In fact, wouldn't it be safe to say that all of those bad memories can be lumped together for that hypothetical person looking back when they were five to seven years old? [¶] A. Sure. It's not uncommon, in my experience in interviewing kids, for them to have lumped a lot of things together. They call it bad time, bad experience. And to them, it's just this very negative experience in their lives. [¶] But as an investigator, I'm trying to ferret out the particular significant aspects of that very negative time. It's difficult for them to recall and describe those things. [¶] Q. Which do you think is more common: A scenario where a victim is filling in gaps in memory with false memories or a suspect who is admitting to some things and minimizing other things? [¶] A. I would

8

say the second." Defendant's trial counsel interposed no objections to this line of questioning and had no followup questions.

Defendant claims that his trial counsel was prejudicially deficient in failing to object to the juror question asking "Wouldn't it be very easy for a young child, aged five to seven, to remember any event or experience at the time that was unusual or traumatic to them in their childhood?" This question produced Lewis's answer: "My experience and training tells me that it is not uncommon for children to recall negative traumatic experiences occurring when they were in that age group."[5] Defendant insists that an objection was necessary and would have prevailed because Lewis had "no . . . training" on this topic.

The applicable standard of review requires us to presume that defendant's trial counsel provided competent representation, and defendant bears the burden of establishing that his trial counsel was deficient. Defendant's assumption that Lewis lacked any expertise on this topic ignores the burden that he bears on appeal to establish a deficiency. Both the presumption and the record rebut defendant's assumption. During the prosecutor's subsequent questioning of Lewis on this topic, Lewis demonstrated that he did have expertise on this topic. Lewis testified that "*the research is -- pretty well-established* that people remember the salient details of negative experiences." (Italics added.) Had defendant's trial counsel objected to the one juror question that defendant now claims was improper, the record before us reflects that the prosecutor would have

---

[5] In his reply brief, defendant shifts his focus and claims that his actual contention is that the juror question about a person "fill[ing] in details that didn't actually happen" was the one that should have been challenged by his trial counsel. Nowhere in his opening brief did he even mention let alone challenge the question that he now seeks to challenge in his reply brief. We refuse to consider this new claim because he failed to raise it in his opening brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765 [unfair to consider new issue raised for the first time in reply brief because respondent has had no opportunity to respond to it].)

had no difficulty in establishing that Lewis had some expertise in this area and that his testimony was properly founded on the "well-established" research on this topic. As we must presume that defendant's trial counsel was familiar with Lewis's qualifications, his decision to omit a futile objection was not deficient.

## C. Closing Argument

Defendant's final contention is that his trial counsel was prejudicially deficient in failing to argue to the jury in closing argument that he could not be convicted of the aggravated sexual assault counts because those offenses had occurred after Jane turned 14.

Jane testified at trial that the *last* time defendant raped her was when she was 14 years old. During the pretext calls, defendant admitted sucking on Jane's breasts when Jane was eight or nine years old and did not deny that he had penetrated her with his fingers at that same age. When he spoke to the police, defendant again admitted sucking on Jane's breasts when she seven or eight years old and admitted touching her vagina with his fingers eight times. Defendant also told the police that he had had sex with Jane three or four times. He claimed that he had not taken Jane's virginity at age seven, as she reported, but when she was "twelve or thirteen years old." Defendant's trial counsel made no opening statement and presented no evidence. The prosecutor's opening argument pointed out that defendant had admitted having sex with Jane not only when she was 14 but also when she was 12 or 13.

Defendant's trial counsel's closing argument asked the jury to carefully examine the evidence: "We know how easy it is for somebody to just make those allegations up without proof. It's a lot tougher to rebut them. . . . [¶] You want to believe that when somebody makes an allegation like that, there has to be proof to it. Nobody could come in and lie about something like that. Yet, it happened." "I want to point some things out to you as to why you should have a doubt as to whether or not this case has been proved."

10

He asserted that "these allegations allegedly occurred 20 years ago" and suggested that remembering something from 20 years ago was difficult. "All you have in evaluating [Jane's] testimony are words. Words. That's it. There's absolutely no physical evidence. No forensic evidence. No pictures of the house. No DNA evidence. [¶] There's nothing, absolutely nothing to support the allegations . . . except words. That's not enough. What you need is you need some corroboration. You need some physical evidence to show that these things happened. This is why it's tough to do cases like this that are 20 years old because there's nothing. You're left to sit there and think, 'How could they come up and remember things that happened 20 years ago?'" He asked the jury to acquit defendant of all of the charges.

If defendant's trial counsel's conduct can be reasonably attributed to sound strategy, we must presume that it was unless defendant overcomes that presumption. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 689.) "It is not deficient performance for a criminal defendant's counsel to make a reasonable tactical choice." (*People v. Ochoa* (1998) 19 Cal.4th 353, 445.) Defendant's trial counsel had a difficult case to defend. Defendant's admissions and implied admissions in the pretext calls and the police interview alone placed him at risk of being convicted of all of the charged counts even without reliance on Jane's testimony. Although defendant had intermittently claimed not to have penetrated Jane until she was 14 years old, he had also seemed to concede that he had both sexually penetrated her and had intercourse with her when she was under the age of 14. In this context, it was not unreasonable for defendant's trial counsel to decide to challenge all of the counts based on the theory that memories from that long ago were not reliable.

While the strategy selected by defendant's trial counsel had little likelihood of success, no other theory was clearly superior. An argument that the rapes and sexual penetrations occurred only after Jane turned 14 would have been inconsistent with defendant's admissions, which the jury was highly unlikely to discount. Defendant's trial

11

counsel could have reasonably concluded that it would be a bad strategy to combine the two theories and argue that memories from long ago are unreliable but defendant's purported memory that he did not penetrate Jane until after she turned 14 was reliable. Defendant has failed to establish that his trial counsel was deficient in choosing the theory he argued to the jury.

## III. Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Elia, Acting P. J.

_____
Grover, J.

People v. Fernandez
H039364

13